**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAYDER EDUARDO RODRIGUEZ-RANGEL,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-1938** |
| **v.** | : | **(JUDGE MANNION)** |
| **CRAIG A. LOWE, *et al*.,** | : | |
| **Respondents.** | : | |

**MEMORANDUM**

Pending before the Court is Hayder Eduardo Rodriguez-Rangel's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, (**Doc. 1**). For the reasons stated herein, the petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen and native of Colombia. (Doc. 4-4 at 2). Petitioner entered the United States at an unknown location without being admitted or inspected by an immigration officer. (Doc. 4-3 at 3). On October 7, 2022, a border patrol agent encountered Petitioner, but paroled him due to detention capacity at the Central Processing Center in El Paso, Texas. (Doc. 4-2 at 3). At that time, the agent noted that Petitioner had no criminal charges other than violating Immigration and Nationality Act ("INA") §212(a)(6)(A)(i). *Id.*

On July 7, 2026, Williamsport ICE Enforcement and Removal Operations ("ERO") responded to an arrest made by Hemlock Township Police Department, assisted by Catawissa Police and Mahoning Township Police. (Doc. 4-3 at 3). Earlier that day, officers conducted a vehicle stop for violations of local traffic laws and encountered Petitioner, who provided a Pennsylvania Driver's License. *Id.*[1] Petitioner admitted to the officers that he did not have status in the United States. *Id.* He was then taken into ICE custody. *Id.* At that time, Petitioner still had no criminal record other than being present in the United States in violation of INA §212(a)(6)(A)(i). *Id.* Petitioner was issued an I-862 Notice to Appear ("NTA") before an immigration judge. *Id.* at 4; *see also* (Doc. 4-4 at 2).

Petitioner is detained at the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 1-2). Petitioner states that he has a pending asylum application, is married to a U.S. citizen, and intends on filing an I-130 Petition for Alien Relative. (Doc. 1, ¶¶2-3). Petitioner is scheduled for a master hearing on August 3, 2026. *See* EOIR Automated Case Information, Alien No. 246-147-137, Colombia (last visited on July 29, 2026).

---

[1] However, Petitioner claims that he was detained by ICE while he pumped gas at the gas station and was provided no reason to explain his detention. (Doc. 1, ¶4).

On July 10, 2026, Petitioner filed the present petition for a writ of habeas corpus. (Doc. 1). On July 27, 2026, Respondents filed their response to the petition. (Doc. 4). Petitioner filed a traverse on the same day. (Doc. 5). Accordingly, this petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as the petition does challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the Court of jurisdiction "only to [these] three discrete actions[.]").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges

from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission.").

**c. 8 U.S.C. §1226(a) applies to Petitioner**

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Petitioner, on the other hand, argues that his continued detention violates due process rights.

Courts nationwide, including this Court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Barbosa da Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 175 F.4th 61, 69 (2d Cir. 2026). In reaching this conclusion, the court noted that its "holding is

consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at 71.

Since *Barbosa da Cunha*, the Sixth, Tenth, and Eleventh Circuits have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 2026 WL 1876709 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). Additionally, the Seventh Circuit has held that a petitioner is likely to succeed on the merits of a claim for wrongful detention under 8 U.S.C. §1225(b)(2)(A), however, the court did not issue a precedential ruling on the issue. *See Castañon-Nova v. United States Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ("*Castañon-Nova I*"); *see also Castañon-Nova v. United States Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. May 5, 2026) ("*Castañon-Nova II*"). Still, the *Castañon-Nova* Court's contemplation of the issue further supports the consensus interpretation. The undersigned has also consistently joined in this consensus interpretation and will continue to do so. Indeed, Respondents "recognize[ ] that this Court and other jurists of this District have rejected [their] arguments[.]" (Doc. 4 at 2).

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission[;]' (3) is 'seeking admission[;]' and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 807 F.Supp.3d 397, 406 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)).

The consensus view of the courts is that "seeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 819 F.Supp.3d 362, 370 (M.D.Pa. 2025)); *see also Barbosa da Cunha*, 175 F. 4th at 77 ("When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is.") (emphasis in original). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.*

Furthermore, while the "entry fiction" doctrine:

> [A]llows the government to treat physical entrants as if still "on the threshold' if they are 'detained shortly after lawful entry" . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."

*Barbosa da Cunha*, 175 F.4th at 86 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien;" and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). Where an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir.

2018) (holding that individuals detained under §1226(a) are entitled to a bond hearing but not entitled to a second bond hearing after their first has been denied).

Here, Petitioner has been living in the United States since at least October of 2022. (Doc. 4-2 at 3). He was taken into immigration custody on July 7, 2026. (Doc. 4-3 at 3). Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A). Accordingly, 8 U.S.C. §1226(a) applies.

**d. Petitioner's detention under 8 U.S.C. §1225(b)(2)(A) violates due process**

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law." U.S. CONST. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action[;]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[;]" and (3) "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Application of the factors reveals a clear violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention"—is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Petitioner's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [the petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."). Third, while the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community," there is no such need here. *Quispe*, 819 F.Supp.3d at 373 (citing *Zadvydas*, 533 U.S. at 690). Petitioner has no criminal record and a pending asylum application. (Doc. 1, ¶¶2-3). He is also married to a U.S. citizen and intends on filing an I-130 Petition for Alien Relative. *Id.* There is nothing in the record to suggest he has an incentive to flee.

Thus, upon weighing of the *Mathews* factors, the Court finds that Petitioner's continued detention under §1225(b)(2)(A) violates his procedural due process rights, warranting release.

**e. EAJA fees and costs**

Petitioner will be permitted to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of this judgment. *See Michelin v. Warden Moshannon Valley Correctional Center*, 169 F.4th 418 (3d Cir. 2026) (holding that a petition for a writ of habeas corpus from immigration detention under §2241 is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified[.]").

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be ordered to immediately release Petitioner, and the Government will be permanently enjoined from re-detaining him under 8 U.S.C. §1225(b). The Government will also be temporarily enjoined from re-arresting Petitioner for a period of fourteen days to ensure that this habeas remedy is effective.

If the Government later detains Petitioner under 8 U.S.C. §1226, it will be required to provide him with notice and, within ten days, a bond hearing

before an immigration judge, who shall provide an individualized assessment as to whether he poses a flight risk or a danger to the community.

If Petitioner is re-detained under §1226 and the Government fails to schedule a timely bond hearing, he will be permitted to reopen this matter. Respondents will be directed to file a declaration or affidavit pursuant to 28 U.S.C. §1746 confirming that Petitioner has been released from custody. An appropriate order shall be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 7/31/26
26-1938-01